AO 106 (Rev. 04/10) Application for a Search Warrant   AUTHORIZED AND APPROVED/DATE: K. Blackwell 5/15/2025

amb
5/19/25

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No. MJ- 25-323-AMG
ONE BLUE MOTOROLA PHONE IN A BLACK CASE, ONE )
BLACK SAMSUNG PHONE IMEI 353495111151580, AND ONE )
DARK BLUE SAMSUNG PHONE IMEI 359606631551166, )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A," which is attached and incorporated by reference herein.

located in the _____ Western _____ District of _____ Oklahoma _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B," which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Child Sexual Abuse in Indian Country |
| 21 O.S. § 843.5(E) | |

The application is based on these facts:
See attached Affidavit of FBI Agent Paige Lang, which is incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Paige Lang, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 5/19/25

_____
Judge's signature

City and state: Oklahoma City, Oklahoma     AMANDA MAXFIELD GREEN
Printed name and title

U.S. Magistrate Judge

## THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ELECTRONIC DEVICES: ONE BLUE MOTOROLA PHONE IN A BLACK CASE, ONE BLACK SAMSUNG PHONE IMEI 353495111151580, AND ONE DARK BLUE SAMSUNG PHONE IMEI 359606631551166. | Case No. _____ <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Paige Lang, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation and have been since February of 2022. During my training and since that time, I have received formal training from the FBI as well as training through contact with experts from various law enforcement agencies regarding a wide range of criminal offenses including child sexual abuse in Indian Country.

2. As a Special Agent with the FBI, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of sworn affidavits, documents and other records. This Affidavit is made in support of an application for a warrant to search the following digital devices: One blue Motorola phone in a black case (SUBJECT DEVICE 1), one black Samsung phone IMEI 353495111151580 (SUBJECT DEVICE 2), and one dark blue Samsung phone, IMEI: 359606631551166 (SUBJECT DEVICE 3) (hereinafter referred to as the "SUBJECT

DEVICES"). The SUBJECT DEVICES are currently located in the Western District of Oklahoma, in the Evidence Control Room at the FBI Oklahoma City Field office in Oklahoma City, Oklahoma. The SUBJECT DEVICES are described in detail in Attachment A to this affidavit. I request a warrant to search the SUBJECT DEVICES for the items specified in Attachment B hereto, which constitute instrumentalities, fruits, and evidence of violation of 18 U.S.C. § 1153 and 21 O.S. § 843.5(E) (Child Sexual Abuse in Indian Country).

4. This investigation, described more fully below, has revealed that there is probable cause to believe that evidence of child sexual abuse are located on the SUBJECT DEVICES. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.

## TERMS

5. Based on my training and experience, I use the following technical terms and definitions:

   a. "Computer," as used broadly herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones. *See* 18 U.S.C. § 1030(e)(1)

   b. "Short Message Service" ("SMS"), as used herein, is a service used to send text messages to mobile phones. SMS is also often referred to as texting, sending text messages or text messaging. The service allows for short text messages to be sent from one cell phone to another cell phone or from the Web to another cell phone.

c. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

d. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

e. "Notes Application," as used herein, refers to a digital tool commonly available on computers, smartphones, and tablets, designed to facilitate the creation, storage, and organization of written information by users.

## FACTS OF INVESTIGATION

7. On March 26, 2025, Stratford Police Department (SPD) received information from CheyAnne Strickler, an employee with the Department of Human Services (DHS). A referral was made by a medical personnel, Brook Houck, who works at the Women's Clinic at 807 N Monte Vista in Ada, Oklahoma. The referral revealed that, on March 18, 2025, Christiana Parker brought her daughter, identified in this affidavit as Jane Doe, to the clinic for an exam. Christiana told Houck that Jane Doe had previously been seen at Urgent Care, and they determined Jane Doe was pregnant. Christiana wanted a second opinion which is why she brought Jane Doe to the Woman's Clinic. Jane Doe told Houck that she had not had her period since November 2024. Jane Doe was given an ultrasound which determined she was approximately eighteen weeks pregnant. This would have put the time of conception very near Jane Doe's sixteenth birthday which is November 14. Houck stated that Christiana refused to leave the room for the exam, so it was likely Jane Doe did not feel comfortable enough to disclose any information about the conception of the child. Houck stated Jane Doe was emotional but denied ever having sex or experiencing any sexual abuse.

8. Christiana told Houck that Jane Doe was homeschooled and is only around the people who live in the residence. At the end of the appointment, a follow-up appointment was scheduled for March 22, 2025. The appointment was missed and rescheduled for March 24, 2025. Christiana called and cancelled the rescheduled appointment and stated that she would not be making any more appointments.

9. On March 27, 2025, a forensic interview was conducted at the Mary Abbott House in Norman, Oklahoma. During the interview, Jane Doe claimed she was not sexually active and the furthest she had ever been with a boy, sexually, was a hug and a kiss on the cheek in the seventh grade. Jane Doe believed the only possible way she could have become pregnant was from her stepdad's semen. Jane Doe was referring to Eren MOORE.[1] Jane Doe explained she and MOORE use the same bathroom, and Jane Doe will sometimes shower after MOORE. Jane Doe believed she became pregnant because she must have touched MOORE's semen that was in the shower and then touched herself. Jane Doe was asked about how she came to this conclusion. Jane Doe told the interviewer it was a family discussion between Jane Doe, MOORE, and Christiana about how Jane Doe became pregnant. During the conversation, MOORE was the one that connected the dots and figured out the shower situation was the only explanation of how Jane Doe could be pregnant. Jane Doe was asked how her parents felt about her pregnancy. Jane Doe stated MOORE feels horrible because it was an accident, and he keeps apologizing to her. Jane Doe stated Christiana is more frazzled than anyone else.

10. In her forensic interview, Jane Doe stated that she is homeschooled and does not go out a lot. Jane Doe stated MOORE is the only male she is ever around. MOORE and Jane Doe

---

[1] Christiana and Moore are not legally married but have lived together and been in a romantic relationship since Jane Doe moved back to Oklahoma when she was 14. Jane Doe identified MOORE as her stepfather in the forensic interview.

stay home together during the day, while Christiana goes to work. No other males live in the residence or have regular access to Jane Doe besides MOORE. Jane Doe stated she is not the type of kid to sneak out of the house. Jane Doe described her and Moore as having a very close relationship. Jane Doe stated MOORE was a safe space for her and she could talk to MOORE about anything.

11. After the interview concluded, Jane Doe's cell phone (SUBJECT DEVICE 1) and Christiana's cell phone were seized by SPD. DHS advised that the children needed to be taken into protective custody. Jane Doe and her one sibling are in the custody of their maternal grandmother. Law enforcement officers secured MOORE and Christiana's residence in preparation to obtain a search warrant. Law enforcement officers observed a black Samsung phone in a black case (SUBJECT DEVICE 2) next to MOORE's wallet. Officers believed this phone belonged to MOORE.

12. On March 27, 2025, SPD and Chickasaw Lighthorse Police executed a Chickasaw Nation tribal search warrant at the residence located at 601 E Murray Street, Apartment 13, Stratford, Oklahoma, within the boundaries of the Chickasaw Nation. During the warrant, SUBJECT DEVICE 2 and other electronic devices were seized from the residence. MOORE is an enrolled member in Chickasaw Nation.

13. On April 1, 2025, FBI agents were informed by DHS case worker Strickler that MOORE disclosed he had "slept with" Jane Doe. Strickler explained, on March 30, 2025, Strickler received a phone call from MOORE and he stated in December 2024 he had been drinking and is a "lightweight." MOORE was under a lot of stress and having a bad day. Jane Doe came into the bedroom to try and cheer MOORE up. Jane Doe climbed on top of MOORE and kissed him. MOORE knew it was wrong, but MOORE did not think about Jane Doe's age at the time. MOORE

stated it was not intentional and he did not groom Jane Doe. MOORE stated everything was consensual.

14.   On March 31, 2025, DHS conducted a child safety meeting with MOORE and Christiana. At the child safety meeting, MOORE confessed again, but with more information. MOORE retold the story from the December incident. MOORE said Jane Doe climbed on top of him and kissed him, then they engaged in sexual intercourse. MOORE stated he and Jane Doe had sexual intercourse twice in November 2024 and once in December 2024. MOORE stated Jane Doe told MOORE that she had feelings for him and MOORE reciprocated those feelings, but they could not do anything because it was wrong. Moore stated they waited until Jane Doe turned sixteen before anything sexual happened. MOORE described Jane Doe as "so mature for her age." MOORE stated Jane Doe is a pretty girl, and when she came up to him, he did not consider her age. MOORE stated multiple times that everything was consensual, and everything occurred after Jane Doe turned sixteen. MOORE stated, prior to Jane Doe's sixteenth birthday, they did not do any "sex things," but they would sometimes hold hands. MOORE restated during the child safety meeting, after Jane Doe turned sixteen, they had sex. MOORE and Jane Doe talked about their feelings and kissed prior to that day. MOORE stated he cares for Jane Doe in a way that he should not, but he does, and he does not know how to handle it. MOORE stated Jane Doe told him that she was sixteen and it would be consensual. MOORE knew it was wrong, but he still did it. MOORE stated this was all his fault, and he feels awful.

15.   After the child safety meeting, Strickler visited Jane Doe and brought up how MOORE told Strickler everything to see Jane Doe's reaction. Jane Doe told Strickler about how well MOORE and Jane Doe got along and stated everything that happened was consensual. MOORE never forced himself on to Jane Doe and Jane Doe did not see MOORE as a pedophile. Jane Doe does not believe that MOORE is attracted to other females her age, and believes MOORE

is only attracted to Jane Doe. Jane Doe told Strickler they did not have sexual intercourse prior to her turning sixteen, but there was a lot of build up between them before she turned sixteen. Jane Doe wants to have a relationship with MOORE, even if he goes to prison. Jane Doe disclosed she and MOORE would either have sexual intercourse in the hallway or in the kitchen of their residence while her younger sibling was asleep in the bedroom. Jane Doe told Strickler, she and MOORE did not discuss their relationship through text but communicated through the Discord application [2] on her phone. Jane Doe stated they talked about her pregnancy through Discord.

16. On April 2, 2025, Chickasaw Lighthorse Police received a phone call from Christiana to report MOORE was missing. Christiana also reported that MOORE had left what she believed was a suicide note on a phone (SUBJECT DEVICE 3) that MOORE had left at Christiana's home. Christiana reported that the suicide note was found in the notes application on the phone (SUBJECT DEVICE 3). She also reported that the suicide note indicated MOORE was not a monster and would be where his brother was beat up. Christiana believed this to be the Byars Bridge in Byars, Oklahoma. Christiana told law enforcement officers MOORE took a firearm with him, and she did not know where he was located.

17. When officers responded to the residence, Christiana further explained to law enforcement officers that she woke up with a handwritten note and MOORE's newly purchased smartphone (SUBJECT DEVICE 3) next to her bed. Christiana stated the note told her to look at the phone (SUBJECT DEVICE 3). Christiana showed law enforcement officers a portion of a video MOORE recorded on SUBJECT DEVICE 3. The video was a self-recorded video of

---

[2] The Discord application allows for users to communicate through text, voice, and video. The Discord application can be accessed on a wide range of digital devices including but not limited to, Windows, MacOS, iOS, Android, Xbox, and PlayStation.

MOORE talking into SUBJECT DEVICE 3. MOORE appeared to be confessing to his relationship and sexual acts with Jane Doe. On April 2, 2025, SPD seized SUBJECT DEVICE 3.

18. On April 3, 2025, Chickasaw Lighthorse Police charged MOORE with Child Sexual Abuse and obtained a Chickasaw Nation tribal arrest warrant for MOORE. On April 3, 2025, SPD charged Christiana with child neglect and obtained an arrest warrant for her through the State of Oklahoma, Garvin County. On April 3, 2025, Christiana was arrested and interviewed by law enforcement officers. Christiana then disclosed the truth about what happened the morning of April 2, 2025. Christiana stated that MOORE left the apartment that morning with blankets and some food. Christiana believed MOORE was hiding in the woods, but she did not know his exact location. MOORE told Christiana if she needed to contact him, she could drive down a certain road and honk her horn, then MOORE would come out to the road. On the evening of April 3, 2025, Moore was located in the woods between Stratford, Oklahoma and Byars, Oklahoma and was arrested by Chickasaw Lighthorse Police on the tribal arrest warrant.

### SPECIFICS OF SEARCH AND SEIZURE OF CELL PHONES

19. Searches and seizures of evidence from smartphones commonly require agents to download or copy information from the smartphones and its components, such as a flash drive or other digital storage units attached to the phone, to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true for the following two reasons:

    a. Smartphone devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all of the stored data that is available in order to determine whether it is included in the warrant

that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

   b. Searching smartphones for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of smartphone hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a smartphone system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since smartphone evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

20. In order to fully retrieve data from a smartphone system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child exploitation where the evidence frequently includes graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all of the system software (operating systems or interfaces, and hardware drivers) and any application software which may have been used to create the data (whether stored on hard drives or on external media).

21. Furthermore, because there is probable cause to believe that the smartphone and its storage devices are all instrumentalities of crimes they should all be seized as such.

**SEARCH METHODOLOGY TO BE EMPLOYED REGARDING ELECTRONIC DATA**

22. The search procedure for electronic data contained in smartphone hardware, smartphone software, and/or memory storage devices may include the following techniques (the

following is a non-exclusive list, as other search procedures may be used):

    a.    on-site triage of smartphone systems to determine what, if any, storage devices or digital storage units have been connected to such smartphone systems, a preliminary scan of image files contained on such systems and digital storage devices to help identify any other relevant evidence or potential victims, and a scan for encryption software;

    b.    on-site forensic imaging of any computers that may be partially or fully encrypted, in order to preserve unencrypted electronic data that may, if not immediately imaged on-scene, become encrypted and accordingly unavailable for examination; such imaging may require several hours to complete and require law enforcement agents to secure the search scene until that imaging can be completed;

    c.    examination of all of the data contained in such smartphone hardware, smartphone software, or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

    d.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offense specified above);

    e.    surveying various file directories and the individual files they contain;

    f.    opening files in order to determine their contents;

    g.    scanning storage areas;

    h.    performing key word searches through all electronic storage areas to

determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and

i. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

23. In my training and experience, and in consultation with other Law Enforcement Officers that perform these types of investigations, conversations are commonly had via text message or other messaging applications between the underage victims and their abusers or other close family or friends regarding the abuse.

24. Based on the above information, there is probable cause to believe that the foregoing laws have been violated, and that evidence of these offenses are located on the SUBJECT DEVICES.

25. Based upon the foregoing, I respectfully request that this Court issue a search warrant for the SUBJECT DEVICES, described in Attachment A, authorizing the seizure of the items described in Attachment B to this affidavit.

Paige Lang
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 19th day of May, 2025.

AMANDA MAXFIELD GREEN
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF SUBJECT DEVICE

SUBJECT DEVICE 1 – One Blue Motorola Phone in a black case



SUBJECT DEVICE 2 - One Black Samsung Phone IMEI: 353495111151580



SUBJECT DEVICE 3 – One Dark Blue Samsung Phone IMEI: 359606631551166



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

1. All records on SUBJECT DEVICES described in Attachment A that relate to violations of 18 U.S.C. § 1153 and 21 O.S. § 843.5(E) (Child Sexual Abuse), including:

   a. Evidence of user attribution showing who used or owned the SUBJECT DEVICES;

   b. records relating to communication between MOORE and Jane Doe, MOORE and Christiana, and any other communication relating to the criminal offense above, to include those that have been deleted, including: incoming and outgoing voice messages; text messages; Discord messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

   c. records relating to documentation or memorialization of the criminal offenses above, including voice memos, notes, photographs, videos, and other audio and video media, and all ExIF information and metadata attached thereto including device information, geotagging information, and information of the relevant dates to the media;

   d. records relating to the planning and execution of the criminal offense above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user

    entered any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

  e. application data relating to the criminal offenses above;

  f. any and all forms of child pornography, whether it be in the form of images, video, audio files, or any other form; and

  g. all records and information related to the geolocation and travel records of SUBJECT DEVICES at a specific point in time.

2. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3. A search of the physical device to collect any device identifiers, serial numbers, or other identifiers.